**LEE LITIGATION GROUP, PLLC**
C.K. Lee (CL 4086)
148 West 24th Street, Eighth Floor
New York, NY 10011
Tel.: 212-465-1180
Fax: 212-465-1181
*Attorneys for Plaintiffs, FLSA Collective Plaintiffs and the Class*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

SANDY YUWONO and ALEXANDER KNUF, *on behalf of himself, FLSA Collective Plaintiffs, and the Class,*

Plaintiffs,

v.

THE ONE GROUP HOSPITALITY, INC., HRA TIMES SQUARE, LLC., d/b/a RA SUSHI, and BENIHANA NATIONAL CORP., d/b/a BENIHANA,

Defendants.

Case No.:

**CLASS AND COLLECTIVE ACTION COMPLAINT**

Jury Trial Demanded

Plaintiffs SANDY YUWONO and ALEXANDER KNUF ("Plaintiffs"), on behalf of themselves and others similarly situated, by and through their undersigned attorney, hereby file this Class and Collective Action Complaint against THE ONE GROUP HOSPITALITY, INC., HRA TIMES SQUARE LLC. d/b/a RA SUSHI, and BENIHANA NATIONAL CORP. d/b/a BENIHANA (collectively, the "Defendants"), and state as follows:

## INTRODUCTION

1. Plaintiffs allege, pursuant to the Fair Labor Standards Act, as amended, 29 U.S.C. §§201 *et. seq.* ("FLSA"), that they and others similarly situated are entitled to recover from Defendants: (1) unpaid wages, including overtime wages, due to timeshaving, (2) unpaid wages

due to invalid tip credit, (3) illegally retained gratuities, (4) liquidated damages, and (5) attorneys' fees and costs.

2. Plaintiffs further allege that, pursuant to the State wage laws, including New York Labor Law ("NYLL") and California Labor Code, they and others similarly situated are entitled to recover from Defendants: (1) unpaid wages, including overtime wages, due to timeshaving, (2) illegally retained gratuities, (3) statutory penalties, including those due to wage notice violations, (4) liquidated damages, and (5) attorneys' fees and costs.

3. Plaintiff YUWONO further alleges that, pursuant to the State wage laws, including New York Labor Law ("NYLL"), he and others similarly situated are entitled to recover from Defendants unpaid wages, including overtime wages, due to an invalid tip credit.

4. Defendants currently own, operate, or manage 166 venues including 30 STKs, 84 Benihanas, 27 Kona Grills and 16 RA Sushis in major metropolitan cities in North America, Europe and the Middle East and 9 F&B venues in four hotels and casinos in the United States and Europe.

5. Plaintiffs, putative collective members, and putative class members are all current and former employees working as servers, bussers, runners, hostesses, bartenders, food runners, and delivery persons for Defendants across the United States. Plaintiffs and similarly situated workers were victims of Defendants' systematic policies and practices designed to underpay wages, unlawfully retain tips and gratuities, and deny legally mandated premiums and benefits in violation of protections afforded under the FLSA and the following State laws and regulations in effect in the States where Defendants do business:

1) Alaska: Alaska Wage and Hour Act, Alaska Statute §23.10.050 *et seq.*;
2) Arizona: Arizona Fair Wages and Healthy Families Act, A.R.S. § 23-340 *et seq.*, and the Arizona Minimum Wage Act Practice and Procedure A.A.C. R20-5-1201 *et seq.*;
3) Arkansas: Arkansas Minimum Wage Act, Ark. Code Ann. § 11-4-201, *et seq.*;

4) California: California Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200-17210; and the California Labor Code and relevant Industrial Welfare Commission Wage Order;

5) Colorado: Colorado Wage Claim Act, Colo. Rev. Stat. § 8-4-101 *et seq.,* and the Colorado Minimum Wage Act, Colo. Rev. Stat. § 8-6-101 *et seq.*;

6) Connecticut: Connecticut Wage Act Conn. Gen. Stat. §§31-58, *et seq.*;

7) Delaware: Delaware Minim Wage Law, Delaware Code Title 19-90 *et seq.*;

8) District of Columbia: District of Columbia Minimum Wage Act Revision Act, D.C. Code § 32-1001 *et seq.*;

9) Florida: Florida's Unpaid Wages Statute, Fla. Stat. 448.08 *et seq.*;

10) Georgia: Georgia Minimum Wage Law, Official Code of Georgia Annotated O.C.G.A. § 34-4 *et seq.*;

11) Hawaii: Hawaii Payment of Wages and other Compensation, Hawaii Revised Statutes Title 21 § *388-1 et seq.;*

12) Idaho: Idaho the Minimum Wage Law 44-1501 *et seq.*, Hours Worked Act §44-1201 *et seq.*, and the Liens, Mortgages and Pledges, Idaho Code § 45-601 *et seq.*;

13) Illinois: Illinois Labor Laws, 820 ILCS 105 *et seq.*;

14) Indiana: Indiana Wages Hours and Benefits, Ind. Code §22-2-2 *et seq.* Indiana Frequency of Wage Payments Ind. Code §22-2-5 *et seq.*;

15) Iowa: Iowa Wage Payment Collection Law, Iowa Code §91A *et seq.*;

16) Kansas: Kansas Labor and Industries Law, Kan. Stat. Ann. §44-1201 *et seq.*;

17) Kentucky: Kentucky Wage Statutes, K.Y. Rev. Stat. Ann. §§ 337.275 *et seq.*;

18) Louisiana: Louisiana's Wage Payment Act, Louisiana Revised Statutes §23:631 *et seq.*;

19) Maine: Maine Employment Practices Act, 26 Me. Rev. Stat. §§ 621-A, 626, 626-A, & 629, and the Maine Minimum Wage and Overtime Law, 26 Me. Rev. Stat. §§ 664 & 670;

20) Maryland: Maryland Wage and Hour Law, Md. Code Ann., Lab. & Empl. § 3-401 *et seq.*, and the Maryland Wage Payment Collection Law, Lab. & Empl. § 3-501 *et seq.*;

21) Massachusetts: Massachusetts Minimum Fair Wage Law, Mass. Gen. L. ch. 151, §1A *et seq.*;

22) Michigan: Michigan Workforce Opportunity Wage Act, MCL §§ 408.411, *et seq.*;

23) Minnesota: Minnesota Fair Labor Standards Act, Minn. Stat. § 177.25, and the Minnesota Payment of Wages Act, Minn. Stat. § 181.101 *et seq.*;

24) Missouri: Missouri Minimum Wage Law, Mo. Rev. Stat. §§ 290.500 *et seq.*;

25) Montana: Montana Minimum Wage and Overtime Compensation Act, MCA § 39-3-401 et seq., and the Montana Payment of Wages Law, MCA §39-3-201 *et seq.*;

26) Nebraska: Nebraska's Wage and Hour Act, Neb. Rev. Stat. § 48-1201 *et seq*., and the Nebraska Wage Payment and Collection Act, Neb. Rev. Stat. § 48-1228 *et seq.*;

27) Nevada: Nevada Minimum Wage Amendment of the Nevada Constitution, Nev. Const. art. 15, § 16, and the Nev. Rev. Stat. Chapt. 60,

28) New Hampshire: New Hampshire Minimum Wage Law, N.H. Rev. Stat. § 279:1 *et seq.*;

29) New Jersey: New Jersey Wage Payment Law, N.J.S.A. §§ 34:11-4.1 *et seq.*; and the New Jersey Wage and Hour Law, N.J.S.A. §§ 34:11-56a *et seq.*;

30) New Mexico: New Mexico Minimum Wage Law, N.M. Stat. Ann. §50-4 *et seq.*;

31) New York: New York Labor Law, Article 19 § 650 et seq., and Article 6 § 190 *et seq.*;

32) North Carolina: North Carolina Wage and Hour Act, N.C.G.S. § 95-25.1, *et seq.*;

33) North Dakota: North Dakota Labor and Employment Law., N.D. Cent. Code 34-01 *et seq.*, and the North Dakota Minimum Wage and Work Conditions Order N.D. Ain Code §4602-07-01 *et seq.*;

34) Ohio: Ohio Minimum Fair Wage Standards Act, O.R.C. § 4111.01 *et seq.*;

35) Oklahoma: Oklahoma General Wage Law, O.S. §§40-165.1. *et seq.*;

36) Oregon: Oregon Minimum Wage Law, Oreg. Rev. Stat. §51-653, and the Oregon Rules Regulating Minimum Wage, Overtime and Working Conditions OAR 839-020-0000, *et seq.*;

37) Pennsylvania: Pennsylvania Minimum Wage Act 43 Pa. Cons. Stat. § 333.101 *et seq.*;

38) Puerto Rico: Puerto Rico Working Hours and Days Laws, 29 L.P.R.A. §§271, *et seq.*;

39) Rhode Island: Rhode Island Minimum Wage Act, R.I. Gen. Laws §§ 28-12-1, et seq., and the Rhode Island Wages Act, R.I. Gen. Laws §§ 28-14-1, et seq.;

40) South Carolina: South Carolina Payment of Wages Act, S.C. Code Ann. § 41-10-10 *et seq.*;

41) South Dakota: South Dakota Labor and Employment Laws, S.D.C.L. 60-1-1, *et seq.*;

42) Texas: Texas Minimum Wage Act, Texas Labor Code § 62.001 *et seq.*;

43) Vermont: Vermont Wages and Medium of Payment Laws, 21 V.S.A. §§341, *et seq.*;

44) Virginia: Virginia Minimum Wage Act, VA Code § 40.1 *et seq.*;

45) Washington: Washington Minimum Wage Act, R.C.W. 49.46.005, *et seq.*; and Washington Minimum Wage Rules, WAC 296-126 *et seq.*;

46) West Virginia: West Virginia Minimum Wage and Maximum Hours Act, W. Va. Code §25-5C-1, *et seq.*;

47) Wisconsin: Wisconsin Hours of Work and Overtime Rules, Wis. Admin. Code, §§ DWD 272.01 et seq. and 274.01 *et seq.*; and

48) Wyoming: Wyoming Minimum Wages, W.S. 1977 §§27-4-201, et seq. and Collection of Unpaid Wages, §§27-4-501, *et seq.*

(collectively, with any other States within which Defendants do business, the "Relevant State Wage and Hour Laws" or "RSWHL").

6. To the extent that gap-time claims (claims for unpaid wages for hours worked up to forty which do not implicate statutory minimum wage laws) or claims seeking damages for failure to pay for all hours of work are not covered by the protection of a State's wage laws, Plaintiffs further allege that they and others similarly situated are entitled to recover from Defendants, the following pursuant to breach of contract and unjust enrichment: (1) wrongfully withheld or diverted payments, (2) punitive damages due to egregious conduct, and (3) attorneys' fees and costs.

## JURISDICTION AND VENUE

7. This Court has jurisdiction over this controversy pursuant to 29 U.S.C. § 216(b), 28 U.S.C. §§ 1331, 1337, and 1343, and has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367.

8. This Court also has jurisdiction pursuant to diversity 28 U.S.C. §§ 1332 as the amount in controversy is over $75,000, and there is diversity of citizenship as Plaintiffs are residents of New York and California, the Corporate Defendants are all incorporated outside of New York and have a shared headquarters in Denver Colorado, and the Individual Defendant is a resident of Florida.

9. The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332, because this is a class action, as defined by 28 U.S.C § 1332(d)(1)(B), in which a member of the putative class is a citizen of a different state than Defendant, and the amount in controversy exceeds the sum or value of $5,000,000, excluding interest and costs. See 28 U.S.C. § 1332(d)(2).

10. Venue is proper in the Southern District pursuant to 28 U.S.C. § 1391 as Plaintiff YUWONO worked in this district and a substantial part of the events and omissions giving rise to the claim occurred in this district.

## PARTIES

11. Plaintiff SANDY YUWONO is a resident of Queens County, New York.

12. Plaintiff ALEXANDER KNUF is a resident of Orange County, California.

13. Corporate Defendants own and operate a chain of Japanese hibachi style BENIHANA restaurants, a chain of steak restaurants known as STK, a chain of grill restaurants known as Kona Grills, and a chain of sushi restaurants known as RA Sushi. The list of locations owned and/or operated by Defendants (rather than merely franchised) is found within Defendant The ONE Group Hospitality, Inc.'s 10K for the fiscal year of 2024. *See* **Exhibit A** (Defendant The ONE Group Hospitality, Inc.'s 10K for the fiscal year of 2024) at 21-25. The locations listed as owned and/or managed collectively, along with other any other Benihanas, STKs, Kona Grills, and/or RA Sushi establishments owned and/or managed by Defendants in the United States are referred to herein as the "Restaurants."

| Location Name | City | Owned or Managed |
|---|---|---|
| STK Atlanta | Atlanta, Georgia | Owned |
| STK Aventura | Aventura, Florida | Owned |
| STK Bellevue | Bellevue, Washington | Owned |
| STK Boston | Boston, Massachusetts | Owned |
| STK Charlotte | Charlotte, North Carolina | Owned |
| STK Chicago | Chicago, Illinois | Owned |
| STK Dallas | Dallas, Texas | Owned |
| STK Denver | Denver, Colorado | Owned |
| STK Doha | Doha, Qatar | Licensed |
| STK Downtown | New York, New York | Owned |
| STK Dubai | Dubai, United Arab Emirates | Licensed |
| STK Ibiza | Illes Balears, Spain | Licensed |
| STK Las Vegas | Las Vegas, Nevada | Managed |

| | | |
|---|---|---|
| STK London | London, England | Managed |
| STK Los Cabos | Cabo San Lucas, Mexico | Licensed |
| STK Miami Beach | Miami Beach, Florida | Owned |
| STK Midtown | New York, New York | Owned |
| STK Milan | Milan, Italy | Managed |
| STK Nashville | Nashville, Tennessee | Owned |
| STK Niagara Falls | Ontario, Canada | Managed |
| STK Orlando | Orlando, Florida | Owned |
| STK Salt Lake City | Salt Lake City, Utah | Owned |
| STK San Diego | San Diego, California | Owned |
| STK San Juan | San Juan, Puerto Rico | Licensed |
| STK San Francisco | San Francisco, California | Owned |
| STK Scottsdale | Scottsdale, Arizona | Managed |
| STK Stratford | London, England | Managed |
| STK Toronto | Toronto, Canada | Managed |
| STK Westwood | Los Angeles, California | Owned |
| STK Washington DC | Washington, D.C. | Owned |
| Benihana Addison Walk | Dallas, Texas | Owned |
| Benihana Alpharetta | Alpharetta, Georgia | Owned |
| Benihana Anaheim | Anaheim, California | Owned |
| Benihana Anchorage | Anchorage, Alaska | Owned |
| Benihana Atlanta I | Atlanta, Georgia | Owned |
| Benihana Beaverton | Beaverton, Oregon | Owned |
| Benihana Bethesda II | Bethesda, Maryland | Owned |
| Benihana Boca Raton | Boca Raton, Florida | Owned |
| Benihana (Express) Brickell Miami | Miami, Florida | Franchised |
| Benihana Broomfield | Broomfield, Colorado | Owned |
| Benihana Burlingame | Burlingame, California | Owned |
| Benihana Carlsbad | Carlsbad, California | Owned |
| Benihana Chandler | Chandler, Arizona | Owned |
| Benihana Cherry Hill | Cherry Hill, New Jersey | Owned |
| Benihana Cincinnati I | Cincinnati, Ohio | Owned |
| Benihana Cleveland | Cleveland, Ohio | Owned |
| Benihana Columbus | Columbus, Ohio | Owned |
| Benihana Concord | Concord, California | Owned |
| Benihana Conroe | Conroe, Texas | Owned |
| Benihana Coral Gables | Coral Gables, Florida | Owned |
| Benihana Coral Springs | Coral Springs, Florida | Owned |
| Benihana Cupertino | Cupertino, California | Owned |

| | | |
|---|---|---|
| Benihana Dallas | Dallas, Texas | Owned |
| Benihana Dearborn | Dearborn, Michigan | Owned |
| Benihana Denver | Denver, Colorado | Owned |
| Benihana Downey | Downey, California | Owned |
| Benihana Dulles | Dulles, Virginia | Owned |
| Benihana Edison | Edison, New Jersey | Franchised |
| Benihana Encino | Encino, California | Owned |
| Benihana Farmington Hills | Farmington Hills, Michigan | Owned |
| Benihana Ft. Lauderdale | Fort Lauderdale, Florida | Owned |
| Benihana Hard Rock Stadium | Miami Gardens, Florida | Owned |
| Benihana Houston I | Houston, Texas | Owned |
| Benihana Houston II | Houston, Texas | Owned |
| Benihana Indianapolis | Indianapolis, Indiana | Owned |
| Benihana Jardim Europa | Jardim Europa, Brazil | Franchised |
| Benihana John Hancock | Chicago, Illinois | Owned |
| Benihana Key West | Key West, Florida | Franchised |
| Benihana Las Colinas | Las Colinas, Texas | Owned |
| Benihana Las Vegas | Las Vegas, Nevada | Owned |
| Benihana Las Vegas | Las Vegas, Nevada | Franchised |
| Benihana Little Rock | Little Rock, Arkansas | Franchised |
| Benihana Lombard | Lombard, Illinois | Owned |
| Benihana Mall Of America | Bloomington, Minnesota | Owned |
| Benihana Manhasset | Manhasset, New York | Owned |
| Benihana Maple Grove | Maple Grove, Minnesota | Owned |
| Benihana Memphis | Memphis, Tennessee | Owned |
| Benihana Miami Beach | Miami Beach, Florida | Owned |
| Benihana Miami | Miami, Florida | Owned |
| Benihana Milwaukee | Milwaukee, Wisconsin | Franchised |
| Benihana Minneapolis | Minneapolis, Minnesota | Owned |
| Benihana Miramar | Miramar, Florida | Owned |
| Benihana Monterrey II | Monterey, California | Franchised |
| Benihana Newport Beach | Newport Beach, California | Owned |
| Benihana NY West | New York, New York | Owned |
| Benihana Ontario | Ontario, California | Owned |
| Benihana Orlando | Orlando, Florida | Owned |
| Benihana Orlando II | Orlando, Florida | Owned |
| Benihana Palm Beach | Palm Beach, Aruba | Franchised |
| Benihana Panama City | Panama City, Panama | Franchised |
| Benihana Pittsburgh | Pittsburgh, Pennsylvania | Owned |

| | | |
|---|---|---|
| Benihana Plano | Plano, Texas | Owned |
| Benihana Plymouth Meeting | Plymouth Meeting, Pennsylvania | Owned |
| Benihana Puente Hills | Puente Hills, California | Owned |
| Benihana Salt Lake City | Salt Lake City, Utah | Owned |
| Benihana San Diego | San Diego, California | Owned |
| Benihana San Francisco | San Francisco, California | Owned |
| Benihana San Salvador | San Salvador, El Salvador | Franchised |
| Benihana Santa Anita | Santa Anita, California | Owned |
| Benihana Santa Monica | Santa Monica, California | Owned |
| Benihana Schaumburg | Schaumburg, Illinois | Owned |
| Benihana Scottsdale | Scottsdale, Arizona | Owned |
| Benihana Short Hills | Short Hills, New Jersey | Owned |
| Benihana Sprint Center | Kansas City, Missouri | Owned |
| Benihana Stuart | Stuart, Florida | Owned |
| Benihana Sugar Land | Sugar Land, Texas | Owned |
| Benihana Talking Stick Resort Arena | Phoenix, Arizona | Owned |
| Benihana Temecula | Temecula, California | Owned |
| Benihana Torrance | Torrance, California | Owned |
| Benihana Troy | Troy, Michigan | Owned |
| Benihana Westbury | Westbury, New York | Owned |
| Benihana Wheeling | Wheeling, Illinois | Owned |
| Benihana Woodlands | Woodlands, Texas | Owned |
| Benihana Yankee Stadium | New York, New York | Owned |
| Kona Grill Alpharetta | Alpharetta, Georgia | Owned |
| Kona Grill Baltimore | Baltimore, Maryland | Owned |
| Kona Grill Boca Park | Las Vegas, Nevada | Owned |
| Kona Grill Boise | Meridian, Idaho | Owned |
| Kona Grill Carmel | Carmel, Indiana | Owned |
| Kona Grill Cincinnati | Cincinnati, Ohio | Owned |
| Kona Grill Columbus | Columbus, Ohio | Owned |
| Kona Grill Dallas | Dallas, Texas | Owned |
| Kona Grill Denver | Denver, Colorado | Owned |
| Kona Grill Eden Prairie | Eden Prairie, Minnesota | Owned |
| Kona Grill El Paso | El Paso, Texas | Owned |
| Kona Grill Gilbert | Gilbert, Arizona | Owned |
| Kona Grill Huntsville | Huntsville, Alabama | Owned |
| Kona Grill Kansas City | Kansas City, Missouri | Owned |
| Kona Grill Minnetonka | Minnetonka, Minnesota | Owned |
| Kona Grill North Star | San Antonio, Texas | Owned |

| | | |
|---|---|---|
| Kona Grill Oak Brook | Oak Brook, Illinois | Owned |
| Kona Grill Omaha | Omaha, Nebraska | Owned |
| Kona Grill Phoenix | Phoenix, Arizona | Owned |
| Kona Grill Plano | Plano, Texas | Owned |
| Kona Grill Riverton | Riverton, Utah | Owned |
| Kona Grill San Antonio | San Antonio, Texas | Owned |
| Kona Grill Sarasota | Sarasota, Florida | Owned |
| Kona Grill Tampa | Tampa, Florida | Owned |
| Kona Grill Tigard | Tigard, Oregon | Owned |
| Kona Grill Troy | Troy, Michigan | Owned |
| Kona Grill Woodbridge | Iselin, New Jersey | Owned |
| RA Sushi Addison | Addison, Texas | Owned |
| RA Sushi Ahwatukee | Phoenix, Arizona | Owned |
| RA Sushi Chino Hills | Chino Hills, California | Owned |
| RA Sushi Downtown Austin | Austin, Texas | Owned |
| RA Sushi Houston | Houston, Texas | Owned |
| RA Sushi Houston II | Houston, Texas | Owned |
| RA Sushi Las Vegas | Las Vegas, Nevada | Owned |
| RA Sushi Leawood | Leawood, Kansas | Owned |
| RA Sushi Mesa | Mesa, Arizona | Owned |
| RA Sushi North Scottsdale | Scottsdale, Arizona | Owned |
| RA Sushi Pembroke Pines | Pembroke Pines, Florida | Owned |
| RA Sushi Plantation Walk | Plantation, Florida | Owned |
| RA Sushi Scottsdale | Scottsdale, Arizona | Owned |
| RA Sushi Southlake | Southlake, Texas | Owned |
| RA Sushi Times Square | New York, New York | Owned |
| RA Sushi Tucson | Tucson, Arizona | Owned |
| Bao Yum | London, England | Owned |
| F&B Services - Hppodrome | London, England | Managed |
| F&B Services - ME Milan | Milan, Italy | Managed |
| F&B Services - W Hotel | Los Angeles, California | Owned |
| Heliot | London, England | Managed |
| Hideout | Los Angeles, California | Owned |
| Radio Rooftop Bar | Milan, Italy | Managed |
| Rivershore Bar & Grill | Oregon City, Oregon | Managed |
| Salt Water Social | Denver, Colorado | Owned |

14. The Restaurants are operated by Defendants as a single integrated enterprise. Specifically, all Restaurants are engaged in related activities, share common ownership, and have a common business purpose. The Restaurants are commonly owned through the common control of Corporate Defendant THE ONE GROUP HOSPITALITY, INC. which directly or indirectly owns all other named entities and has the power to make binding decisions for the entities.

(a) The Restaurants are under the control of Defendants, and Corporate Defendant THE ONE GROUP HOSPITALITY, INC. owns and operates all the Restaurants as a single integrated enterprise. *See* **Exhibit A** (Defendant The ONE Group Hospitality, Inc.'s 10K for the fiscal year of 2024).

(b) Emanuel Hilario, President and Chief Executive Officer of Corporate Defendant THE ONE GROUP HOSPITALITY, INC., stated that "Benihana and RA Sushi have also benefited from One Group's expertise in operations, marketing, and culinary innovation," highlighting the company's active engagement in the management and day-to-day operations of the acquired restaurant brands. *See* **Exhibit B** (Nation's Restaurant News' Article Quoting Emanual Hilario).

(c) The Restaurants are advertised together on a common website of Corporate Defendant THE ONE GROUP HOSPITALITY, INC., found at www.togrp.com with links to each of the Restaurants' respective websites, menus, and delivery services. *See* **Exhibit C** (Defendants' Website).

(d) The Restaurants' human resources functions are coordinated by Corporate Defendant THE ONE GROUP HOSPITALITY, INC., as prospective employees are directed to apply through career page links for the Restaurants found on THE ONE GROUP HOSPITALITY, INC.'s official website. *See* **Exhibit C** (Defendants' Website).

(e) Both Benihana restaurants and RA Sushi bar share identical career page interfaces and offer the same employment benefits, including participation in the Military Spouse Employment Partnership program. *See* **Exhibit D** (Defendants' Website's Career Page).

(f) Corporate Defendant THE ONE GROUP HOSPITALITY, INC. owns the U.S. federal registration rights to "Benihana," and "RA Sushi" and several related word marks and design marks related to these brands. *See* **Exhibit A.**

(g) Corporate Defendant THE ONE GROUP HOSPITALITY, INC. reported in its 10-k filing that its net revenue increase was primarily attributable to the acquisition of the Benihana and RA Sushi restaurants, which collectively generated $338.1 million in revenue. This shows that all revenue from the Restaurants is consolidated for financial reporting purposes.

(h) All Restaurants are engaged in the same business of providing food service with a common Japanese theme that emphasize a fusion of traditional Japanese and American cuisine.

(i) The Restaurants share payroll methods and have a single, centralized system of labor relations for employees, as Corporate Defendant THE ONE GROUP HOSPITALITY, INC. reports, that it relies "on hourly wage employees for kitchen staff, servers, bussers, runners, polishers, hosts, bartenders, barbacks, reservationists, administrative support, and interns" and "[t]he average headcount for employees in [its] domestic restaurants is 70." *See* **Exhibit A.**

(j) Defendants explicitly advertise and offer gift cards. Gift cards are transferrable among the Restaurants. *See* **Exhibit E** (Defendants' Website's Gift Card Page).

(k) The website of Corporate Defendant THE ONE GROUP HOSPITALITY, INC. advertises a customer loyalty program offering 1 point for every dollar spent at the Restaurants, including Benihana and RA Sushi. *See* **Exhibit F.**

15. Corporate Defendant THE ONE GROUP HOSPITALITY, INC. is a foreign business corporation organized under the laws of the State of Delaware, with a principal place of business located at 1624 Market Street, Suite 311, Denver, Colorado 80202, and address for service located at 1209 Orange St., Wilmington, Delaware 19801.

16. Corporate Defendant HRA TIMES SQUARE LLC. d/b/a RA SUSHI is a limited liability company organized under the laws of the State of Florida, with a principal place of business located at 229 West 43rd Street, Unit 221, NYC 10036, and address for service located at 600 Mamaroneck Avenue #400 Harrison, NY 10528.

17. Corporate Defendant BENIHANA NATIONAL CORP. d/b/a BENIHANA is a business corporation organized under the laws of the State of Delaware, with a principal place of business located at 47 W 56th St, New York, NY 10019, and address for service located at 600 Mamaroneck Avenue #400 Harrison, NY 10528.

18. At all relevant times, Corporate Defendants were and continue to be an "enterprise engaged in commerce" within the meaning of the FLSA, NYLL, and regulations thereunder.

19. At all relevant times, the work performed by Plaintiffs, FLSA Collective Plaintiffs

and Class Members was directly essential to the businesses operated by Defendants.

**NATIONWIDE – FLSA COLLECTIVE ACTION ALLEGATIONS**

20. Plaintiffs bring claims for relief as a collective action pursuant to FLSA §16(b), 29 U.S.C. § 216(b), on behalf of all current and former non-exempt tipped employees (including, but not limited to, servers, bussers, runners, hostesses, bartenders, food runners, and delivery persons, among others) employed by Defendants at any of the Restaurants on or after the date that is six years (plus 228 days extension of tolling during the COVID pandemic for New York State locations) before the filing of the Complaint ("FLSA Collective Plaintiffs").

21. At all relevant times, Plaintiffs and other FLSA Collective Plaintiffs have been similarly situated, have had substantially similar job requirements and pay provisions, and have been and continue to be subjected to Defendants' decisions, policies, plans, programs, practices, procedures, protocols, routines, and rules, all of which have culminated in a willful failure and refusal to pay Plaintiff and FLSA Collective Plaintiffs (i) their proper wages due to timeshaving, and (ii) all of FLSA Collective Plaintiffs' tips. Further, with respect to employees from whom a tip-credit allowance was taken, Defendants were not entitled to take any tip credits under the FLSA, or to compensate Plaintiff and FLSA Collective Plaintiffs at a sub-minimum wage hourly rate, because they improperly retained gratuities, and failed to satisfy all statutory requirements for taking a tip credit.

22. Plaintiffs' claims stated herein are essentially the same as those of the other FLSA Collective Plaintiffs.

23. The claims for relief are properly brought under and maintained as an opt-in collective action pursuant to §16(b) of the FLSA, 29 U.S.C. 216(b). The FLSA Collective Plaintiffs are readily ascertainable. For purposes of notice and other purposes related to this action, their

names and addresses are readily available from the Defendants. Notice can be provided to FLSA Collective Plaintiffs via first class mail to the last address known to Defendants.

**NATIONWIDE – RULE 23 CLASS ALLEGATIONS**

24. Pursuant to Rule 23 of the Federal Rules of Civil Procedure ("F.R.C.P."), Plaintiffs bring this as a class action, on behalf of all current and former non-exempt (including, but not limited to servers, bussers, runners, hostesses, bartenders, food runners, and delivery persons, among others) employed by Defendants at the Restaurants on or after the date that is six years (plus 228 days extension of tolling during the COVID pandemic for New York State locations) before the filing of the Complaint in this case (the "Class Members" or "Class").

25. The Class Members are readily ascertainable. The number and identity of the Class Members are determinable from the records of Defendants. The hours assigned and worked, the position held, and rates of pay for each Class Member are also determinable from Defendants' records. For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendants.

26. The proposed Class is so numerous that a joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court. Although the precise number of such persons is unknown, as the facts on which the calculation of that number rests are presently within the sole control of Defendants, there is no doubt that there are more than forty (40) members of the Class. The class further includes a subclass of tipped employees paid at a subminimum wage rate due to an invalid tip-credit allowance ("Tip-Credit Subclass") who also number in excess of forty (40) people.

27. Plaintiffs are members of the Class and Plaintiff YUWONO is also a member of the Tip-Credit Subclass. Unlike Plaintiff YUWONO, Plaintiff KNUF was paid above the

minimum wage with no tip-credit deduction and therefore, Plaintiff KNUF is not a member of the Tip-Credit Subclass.

28. Plaintiffs' claims are typical of those claims which could be alleged by any member of the Class, and the relief sought is typical of the relief which would be sought by each member of the Class in separate actions. All the Class Members were subject to the same corporate practices of Defendants, as alleged herein, of (i) failing to pay proper wages, including overtime, due to timeshaving; (ii) failing to provide wage and hour notices to Class Members upon hiring and as legally required thereafter; (iii) failing to distribute all tips owed to Class Members, and (iii) failing to provide proper wage statements for each payment period.

29. With regards to the Tip-Credit Subclass, Plaintiff YUWONO and the Tip-Credit Subclass suffered from Defendants' failure to pay proper minimum wages and proper overtime rates due to Defendants' invalid tip credit policy because Defendants (i) failed to properly provide tip credit notices, including notice that employees were entitled to make-up pay for weeks when their tips did not cover the tip-credit taken, at dates of hiring and annually thereafter, (ii) deducted tip credit for all hours worked despite having caused tipped employees to engage in non-tipped duties for hours exceeding 20% of the total hours worked each workweek, (iii) failed to provide proper wage statements clearly indicating tip credit allowances for each payment period, (iv) failed to accurately keep track of daily tips earned and maintain records thereof, and (vi) failed to compensate the shortfall between tipped employees' earnings and the minimum wage in weeks when the employees' tips were insufficient.

30. Defendants' corporate-wide policies and practices affected all Class Members similarly, and Defendants benefited from the same type of unfair and/or wrongful acts as to each

Class Member. Plaintiffs and other Class Members sustained similar losses, injuries, and damages arising from the same unlawful policies, practices, and procedures by Defendants.

31. Plaintiffs are able to fairly and adequately protect the interests of the Class and have no interests antagonistic to the Class. Plaintiffs are represented by attorneys who are experienced and competent in both class action litigation and employment litigation, and who have previously represented plaintiffs in wage and hour cases.

32. A class action is superior to other available methods for the fair and efficient adjudication of the controversy—particularly in the context of the wage and hour litigation where individual class members lack the financial resources to vigorously prosecute a lawsuit against corporate defendants. Class action treatment will permit a large number of similarly situated persons to prosecute common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender. Because the losses, injuries, and damages suffered by each individual Class Members are small, in the sense pertinent to a class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for the individual Class Members to redress their wrongs. Important public interests will be served by addressing the matter as a class action. The adjudication of individual litigation claims would result in a great expenditure of Court and public resources; however, treating the claims as a class action would result in a significant saving of these costs. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent and varying adjudications with respect to individual Class Members, establishing incompatible standards of conduct for Defendants, resulting in the impairment of Class Members' rights and the disposition of their interests through actions to which they were not parties. The issues in this action can be decided by means of common, class-wide proof. In

addition, if appropriate, the Court can, and is empowered to, fashion methods to efficiently manage this action as a class action.

33. Defendants and other employers throughout the country violate the NYLL and other state wage and hour laws. Current employees are often afraid to assert their rights out of fear of direct or indirect retaliation. Former employees are fearful of bringing claims because doing so can harm their current employment, future employment, and future efforts to secure employment. Class actions provide class members who are not named in the Complaint a degree of anonymity, which allows for the vindication of their rights while eliminating or reducing these risks.

34. There are questions of law and fact common to the Class which predominate over any questions affecting only individual class members, including:

a) Whether Defendants employed Plaintiffs and Class Members within the meaning of New York Labor Law and applicable state laws;

b) What are and were the policies, practices, programs, procedures, protocols, and plans of Defendants regarding the types of work and labor for which Defendants did not properly pay Plaintiffs and the Class Members properly;

c) At what common rate, or rates subject to common methods of calculation, were and are Defendants required to pay to Plaintiffs and the Class Members for their work;

d) Whether Defendants properly notified Plaintiffs and the Class Members of their hourly rates;

e) Whether Defendants operated their business with a policy of failing to pay Plaintiff and Class Members for all hours worked;

f) Whether Defendants failed to remit all earned tips to Plaintiffs Class Members;

g) Whether Defendants properly provided written notice to Plaintiff YUWONO and Tip-Credit Subclass, in their native language, that Defendants were taking a tip credit;

h) Whether Defendants provided proper tip credit notice to Plaintiff YUWONO and the Tip-Credit Subclass members at hiring and annually thereafter;

i) Whether Defendants accurately tracked the amounts of tips earned each day and maintained records thereof;

j) Whether Defendants caused tipped employees to engage in non-tipped duties exceeding 20% or two hours of their work shift;

k) Whether Defendants operated their business with a policy of failing to pay Plaintiffs and Class Members for all hours worked, due to timeshaving;

l) Whether Defendants provided proper wage statements informing: (i) Tip-Credit Subclass of the amount of tip credit allowance for each payment period; and (ii) all non-exempt employees of information required to be provided on wage statements as required under the NYLL and applicable state laws;

m) Whether Defendants improperly included in the tip pool non-tipped employees, who did not serve customers; and

n) Whether Defendants provided proper wage and hour notice, at date of hiring and annually, to all non-exempt employees, in their native language, per requirements of the NYLL and applicable state laws;

## STATEMENT OF FACTS

*Plaintiff YUWONO's Employment*

35. In or around October 2023, Plaintiff YUWONO was hired to work as a server at Defendants' RA Sushi restaurant located at 229 West 43rd Street, Unit 221, NYC 10036. Plaintiff YUWONO's employment with Defendants ended in or around June 2025 when he was terminated.

36. Throughout his employment, Plaintiff YUWONO was compensated at the prevailing tipped credit minimum hourly wage rate.

37. At all times, Plaintiff YUWONO was compensated at the tip-credit minimum wage. In 2023, Plaintiff YUWONO was compensated at $10.00 an hour. In 2024, Plaintiff YUWONO was compensated at $10.65 an hour. In 2025, Plaintiff YUWONO was compensated at $11.00 an hour. FLSA Collective Plaintiffs and Tip-Credit Subclass members were compensated at a similar rates.

38. Throughout his employment, Plaintiff YUWONO worked four (4) days per week, from Wednesday through Saturday. From October 2023 until January 2024 he was scheduled to work from 4:00 P.M. to 11:30 P.M. From January 2024 until June 2025 he was scheduled to work

from 10:30 A.M. to 7:00 P.M. Plaintiff YUWONO worked shifts ranging from 7.5 hours to 8.5 hours. Plaintiff YUWONO's schedule totaled thirty (30) hours per week from October 2023 until January 2024, and thirty-four (34) hours per week from January 2024 until June 2025.

39. Throughout his employment, Plaintiff YUWONO consistently worked both his scheduled hours and additional hours, which went uncompensated.

*Plaintiff KNUF's Employment*

40. In or around March 2022, Plaintiff KNUF was hired to work as a server at Defendants' BENIHANA restaurant located at 2100 E Ball Rd, Anaheim, CA 92806. Plaintiff KNUF's employment with Defendants ended in or around October 2022.

41. Throughout his employment, Plaintiff KNUF was compensated at approximately $16.00 an hour.

42. Plaintiff KNUF's scheduled varied in the amount of days he worked each week. On the days Plaintiff KNUF did work, Plaintiff KNUF's schedule was 12:00 pm to 8:00 pm.

43. Throughout his employment, Plaintiff KNUF consistently worked both his scheduled hours and additional hours, which went uncompensated.

*Plaintiffs', FLSA Collective Plaintiffs' and Class members' Wage Claims*

44. Throughout Plaintiff YUWONO's employment, Plaintiff YUWONO experienced situations where, upon attempting to clock out at the end of his shift, he discovered that he had already been clocked out without his knowledge or authorization. This occurred approximately once per week throughout his employment. Plaintiff YUWONO reported these incidents to management, but his complaints were dismissed, and he was told to "take it or leave it." As a result, Plaintiff YUWONO was time-shaved approximately one (1) hour per week. FLSA

Collective Plaintiffs and Class Members were similarly subjected to off-the-clock work due to unauthorized and premature clock-outs.

45. In addition to clocking Plaintiff and other workers out while they were still working, Defendants would not compensate employees for all hours of actual worked. Specifically, Plaintiff YUWONO regularly noticed that between five (5) to ten (10) hours of work were missing from his paychecks each month without any explanation as Defendants routinely and improperly adjusted his time records in the company's computer system to reduce the total hours worked. FLSA Collective Plaintiffs and Class Members were similarly timeshaved and were subject to improper timekeeping practices, whereby their recorded hours were reduced or altered, resulting in unpaid wages.

46. Defendant failed to compensate meal breaks that employees were required to work through. Defendant failed to track days where employees meals were interrupted. For Plaintiff YUWONO, a one-hour meal deduction was automatically applied to Plaintiff YUWOMON's time records each workday throughout his employment. For Plaintiff KNUF, Defendant failed to compensate 30 minute meal breaks, which were interrupted by work. As a result, Plaintiff YUWONO was time-shaved four (4) hour per week. FLSA Collective Plaintiffs and Class Members were similarly subjected to off-the-clock work due to automatic meal break deductions.

47. Plaintiffs, FLSA Collective Plaintiffs, and the Tip-Credit Subclass, also suffered from Defendants' retention of gratuities through Defendants' invalid tip pooling arrangement. Defendants implemented a policy at where Plaintiffs and other non-exempt tipped employees were subject to a tip pool to which they did not agree, which was set by and enforced by Defendants. For Plaintiff YUWONO and Plaintiff KNUF, Defendants did not allow Plaintiff to see tip sheets and failed to inform Plaintiffs of their respective tip pool contribution. As a result, Defendants

illegally retained tips through the tip pooling arrangement. Such improper tip pooling policies invalidates Defendants' tip credit allowance.

*Plaintiff YUWONO's and Tip-Credit Class members' Claims*

48. Throughout his employment, Plaintiff YUWONO was paid at the prevailing tip credit minimum wage. However, Defendants were not entitled to claim any tip credit allowance from Plaintiff YUWONO under the FLSA or NYLL because Defendants: (i) failed to provide proper notice that a tip credit was being claimed, which included failing to inform employees they were entitled to make-up pay between their earnings and the minimum wage on weeks their tips failed to equal or exceed the tip-credit taken by Defendants, (ii) claimed a tip credit for all hours worked despite having caused tipped employees to engage in non-tipped duties in excess of two (2) hours or twenty percent (20%) of the total hours each shift, (iii) failed to record the tip credit allowance taken on periodic wage statements given to Plaintiff YUWONO, and (iv) failed to accurately keep track of daily tips earned and maintain records thereof. Similarly, Defendants are not entitled to claim any tip credit allowance from the Tip-Credit Subclass members.

49. Plaintiff YUWONO never received proper notice regarding the tip credit allowance being claimed by Defendants from his minimum wage. Similarly, FLSA Collective Plaintiffs, and the Tip-Credit Subclass members never received proper tip credit notice.

50. Further on weeks when Plaintiff YUWONO's, FLSA Collective Plaintiffs', and Class Members' tips did not equal or exceed the tip credit taken, Defendants failed to compensate the shortfall between the employees' earnings and the minimum wage. Defendants' policy resulted in Plaintiff YUWONO not receiving the minimum wage for at least the following weeks ending on: November 5, 2023, November 12, 2023, November 19, 2023.

51. Similarly, when FLSA Collective Plaintiffs', and Class Members' tips failed to

meet the minimum wage and Defendants failed to provide any additional compensation.

52. Plaintiff YUWONO was required to engage in around two hours (2) hours or more than twenty percent (20%) of his working time in non-tipped related activities, including, but not limited to, sweeping, mopping, cleaning the juice machine, refilling ice station, cutting lemons and limes, taking out the trash, refilling condiments, and rolling silverware (hereinafter the "non-tipped duties"). Similarly, the Tip-Credit Subclass members spent an average of two (2) hours or more than twenty percent (20%) of the total hours worked each shift on non-tipped duties. Despite Plaintiff YUWONO, FLSA Collective Plaintiffs, and the Tip-Credit Subclass members engaging in around two (2) hours of non-tipped work, Defendants improperly claimed tip credit for all hours worked.

53. Plaintiff, FLSA Collective Plaintiffs, and the Tip-Credit Subclass did not receive tips during weeks they were employed for "training purposes".

*Plaintiffs' and Class Members' Wage Notice Claims:*

54. At all relevant times, Defendants failed to provide accurate wage notices and wage statements to Plaintiff and Subclass members, in violation of the Wage Theft Protection Act ("WTPA")—incorporated into the NYLL and California Labor Code 226 LC.

55. At all relevant times, Defendants paid Plaintiff and Subclass members either in cash or by personal check, and failed to provide any paystubs to them with every weekly payment.

56. In failing to provide proper wage statements and notices, Defendants have failed to comply with the law in a manner that entails a concrete harm to an interest identified by the New York State legislature. Following the decision in *Guthrie v. Rainbow Fencing Inc.*, 113 F.4th 300, 303 (2d Cir. 2024), Courts have generally held that there is no categorical bar on Article III standing for WTPA claims. Instead, the Second Circuit found that "[t]he lack of such notices and

statements might impair 'an employee's ability to seek relief for violations they may not have information about'" to an extent sufficient to support standing.

57. New York Court continue to find sufficient standing to support standing to support these claims. One such Court stated the following at Summary Judgment:

> "Here, the Court determines that Plaintiffs have adequately alleged and established actual and concrete downstream harm as a result of Defendants' failure to provide the required wage and hour notices and wage statements. Plaintiffs have shown that "Defendants' violations impaired their ability to seek relief due to a lack of information." More than that, Plaintiffs have proved, and the Court agrees, that Defendants' failure to maintain proper wage statements because of their automatic meal-break deduction and eight-hour rounding led Plaintiffs to lose wages. These are exactly the types of harm that the Second Circuit considered to be sufficient to establish standing in *Guthrie*. Therefore, the Court finds for Plaintiffs on this issue."

*Sanchez v. Clipper Realty, Inc.*, 2026 U.S. Dist. LEXIS 36716, *61 (S.D.N.Y. February 23, 2026) (internal citations removed).

> The Court finds Plaintiff sufficiently alleges injury under section 226. Plaintiff states that he was unable to ascertain how much he was owed and/or whether Bodum USA was actually calculating his commissions properly because Defendants failed to include any information about commissions on the wage statements. Under section 226, an "injury has occurred whenever the employee cannot easily determine ... rates of pay and all hours worked at each rate."

*Fox v. Bodum USA, Inc.*, No. CV 25-04249, 2025 LX 415800, at *27-28 (C.D. Cal. Oct. 7, 2025) (internal citations and quotations omitted).

58. Here, Defendants' conduct is has led to exactly the kind of injury contemplated in *Guthrie* and *Sanchez.* By failing to inform Plaintiff and New York and California Class Members of the actual hours that they worked by not providing them with wage statements, Defendants were able to hide their wrongdoing, as Plaintiff and New York and California Class Members were unaware of the fact that they were being underpaid. Had Defendants provided proper wage statements to Plaintiff and New York and California Class Members which accurately listed the total number of hours Plaintiff and New York and California Class Members actually worked, as required by law, Defendants would have had to either (a) increase the wages to correspond to the

hours actually worked or (b) forthrightly acknowledge, by way of the wage statement, that the employee's wages did *not* correspond to the hours the employee actually worked.

59. By failing to report all of Plaintiff's and New York and California Class Members' hours, Defendants were able to reduce the employee earnings, and Defendants' contribution to those earnings, that they later reported to the IRS through the employee's W-2 form, as such information is derived from the information on employees' wage statements. The effect of reporting reduced wages on an employees' W-2 is, in turn, to reduce the amount of benefits available to the employee—such as unemployment benefits and social security benefits—as an employee's entitlement to benefits reflects how much money he or she is reported as having contributed to the social security system. As a result, Plaintiff and New York and California Class Members were irreversibly injured with respect to their benefits (including social security benefits)—a fact which Defendants were able to hide from them by failing to provide them with proper wage statements.

60. Furthermore, Defendants failed to provide any wage notices to Plaintiff or New York and California members. Even if Defendants' provided wage notices, the wage notices would have been inadequate as they would have failed to provide employees' actual pay rates, which were reduced by Defendants' time shaving. Once again, had Defendants provided Plaintiff and New York and California Class Members with wage notices that communicated the rates that Defendants actually intended to pay them, Plaintiffs and New York and California Class Members would have been able to contest the unfair pay rates or choose not to take a job with Defendants. Instead, due to Defendants intentional hiding of that information, Plaintiffs and New York and California Class Members accepted their employments with Defendants without the knowledge that Defendants did not intend to be bound to their promised pay rates.

61. Defendants knowingly and willfully operated their business with a policy of failing to provide Plaintiff and New York and California Class Members with wage notices and accurate wage statements, in violation of the NYLL and California Labor Code 226 LC.

62. Defendants knowingly and willfully operated their business with a policy of not paying the New York State minimum wage, and the proper overtime rate thereof for hours worked over forty (40) in a workweek, to Plaintiffs, a subclass of FLSA Collective Plaintiffs and the Tip-Credit Subclass Members, due to an invalid tip credit. Defendants were not entitled to claim any tip credits under the FLSA and the NYLL.

63. Defendants knowingly and willfully operated their business with a policy of not paying Plaintiffs, FLSA Collective Plaintiffs and the Class Members their proper wages, including overtime, due to timeshaving, in violation of the FLSA and the NYLL.

64. Plaintiffs retained Lee Litigation Group, PLLC to represent Plaintiffs, FLSA Collective Plaintiffs and Class Members.

## STATEMENT OF CLAIM

### COUNT I

### VIOLATION OF THE FAIR LABOR STANDARDS ACT

65. Plaintiffs reallege and reaver all the above allegations of this Complaint as fully set forth herein.

66. At all relevant times, Defendants were and continue to be employers engaged in interstate commerce and/or the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a). Plaintiffs and FLSA Collective Plaintiffs are covered individuals within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a).

67. At all relevant times, Defendants employed Plaintiffs and FLSA Collective Plaintiffs within the meaning of the FLSA.

68. At all relevant times, each Corporate Defendant had gross annual revenues in excess of $500,000.

69. At all relevant times, Defendants had a policy and practice that failed to pay proper wages to Plaintiffs and a subclass of FLSA Collective Plaintiffs, due to an invalid tip credit. Defendants were not entitled to claim any tip credits from Plaintiffs and FLSA Collective Plaintiffs under the FLSA.

70. At all relevant times, Defendants showed a willful disregard for the provisions of the FLSA by instituting a tip pooling scheme where Plaintiff YUWONO and other non-exempt tipped employees were subject to a tip pool they did not agree to, which was set by and enforced by Defendants. Defendants failed to maintain tip sheets and failed to inform Plaintiffs of their respective tip pool contribution. As a result, Defendants illegally retained tips through the tip pooling arrangement. Such improper tip pooling policy invalidates Defendants' tip credit allowance.

71. Defendants knew of and/or showed a willful disregard for the provisions of the FLSA, as evidenced by their failure to compensate Plaintiffs and FLSA Collective Plaintiffs their wages, including overtime, when Defendants knew or should had known such was due.

72. Records, if any, concerning the number of hours worked by Plaintiffs and FLSA Collective Plaintiffs and the actual compensation paid to Plaintiffs and FLSA Collective Plaintiffs should be in the possession and custody of the Defendants. Plaintiffs intend to obtain these records by appropriate discovery proceedings to be taken promptly in this case and, if necessary, will then seek leave of Court to amend this Complaint to set forth the precise amount due.

73. Defendants failed to properly disclose or apprise Plaintiff YUWONO and FLSA Collective Plaintiffs of their rights under the FLSA.

74. As a direct and proximate result of Defendants' willful disregard of the FLSA, Plaintiff YUWONO and FLSA Collective Plaintiffs are entitled to liquidated damages pursuant to the FLSA.

75. Due to the intentional, willful, and unlawful acts of Defendants, Plaintiff YUWONO and FLSA Collective Plaintiffs suffered damages in an amount not presently ascertainable of unpaid wages, including overtime, due to timeshaving, unpaid wages due to invalid tip credit, damages representing disgorgement of illegally retained tips, reimbursement for uniform purchase and maintenance costs, plus an equal amount as liquidated damages.

76. Plaintiff YUWONO and FLSA Collective Plaintiffs are entitled to an award of their reasonable attorneys' fees and costs pursuant to 29 U.S.C. §216(b).

## COUNT II

## VIOLATION OF THE NEW YORK LABOR LAW

77. Plaintiff YUWONO realleges and reavers all the above allegations of this Complaint as fully set forth herein.

78. At all relevant times, Plaintiff YUWONO and New York Class Members were employed by the Defendants within the meaning of the New York Labor Law, §§ 2 and 651.

79. At all relevant times, Defendants engaged in a policy and practice of not compensating Plaintiff YUWONO and New York Class Members all wages, including overtime, in direct violation of the NYLL.

80. At all relevant times, Defendants engaged in a policy and practice of not compensating Plaintiff YUWONO and New York Class Members all wages, including overtime, due to timeshaving, in direct violation of the NYLL.

81. At all relevant times, Defendants engaged in a policy and practice of not compensating Plaintiff YUWONO and New York Class Members all wages, including minimum wage and overtime due to invalid tip credit, in direct violation of the NYLL. Defendants were not entitled to claim any tip credit from Plaintiff or Class Members under the NYLL.

82. Defendants willfully violated Plaintiff YUWONO and the New York Class Members' rights by instituting an illegal tip pooling scheme in which Class Members were required to share tips with non-tipped employees. In doing so, Defendants willfully deprived Plaintiff YUWONO and New York Class Members of their lawfully earned wages.

83. Defendants knowingly and willfully operated their business with a policy of not providing Plaintiff YUWONO and New York Class Members proper tip notices, at date of hiring and annually thereafter, as required under the NYLL.

84. Defendants knowingly and willfully operated their business with a policy of not providing Plaintiff YUWONO and New York Class Members proper wage notice, at date of hiring and annually thereafter, as required under the NYLL.

85. Defendants knowingly and willfully operated their business with a policy of not providing Plaintiff YUWONO and New York Class Members with proper wage statements, as required under the NYLL.

86. Due to Defendants' NYLL violations, Plaintiff YUWONO, New York Class Members and the Tip-Credit Subclass Members are entitled to recover from Defendants their unpaid minimum wages and overtime due to timeshaving, unpaid wages due to invalid tip credits,

damages representing disgorgement of illegally retained tips, unpaid uniform purchase and maintenance costs, reasonable attorney's fees, liquidated damages, statutory penalties, and costs and disbursements of the action, pursuant to the NYLL.

## COUNT III

## FAILURE TO PAY FOR ALL HOURS WORKED

(Wage Order No. 5-2001 ¶¶ 4(B), 11; Cal. Lab. Code §§ 221, 223) (Cal. Lab. Code §§ 201-203, 206) (Wage Order No. 5-2001 ¶ 3; Cal. Labor Code §§ 510, 1194 et seq., 1198) (Wage Order No. 5-2001 ¶ 12; Cal. Lab. Code §§ 226.7)

87. Plaintiff KNUF, on behalf of himself and California Class members, incorporates all the above allegations as if fully set forth herein.

88. Paragraph 4(B) of the Wage Order provides that all employers must "pay to each employee, on the established payday for the period involved, not less than the applicable minimum wage for all hours worked in the payroll period...."

89. As alleged above, Defendants required Plaintiff KNUF and California Class members to work uncompensated.

90. As a result of the wrongful and unlawful acts of Defendants alleged herein, Plaintiff KNUF and California Class members have been deprived of compensation for all hours worked in amounts to be determined and are entitled to recovery of said amounts according to proof, interest thereon, injunctive relief, attorneys' fees and costs.

91. California Labor Code § 510(a) provides, in pertinent part, as follows: Eight hours of labor constitutes a day's work. Any work in excess of eight hours in one workday and any work in excess of 40 hours in one workweek and the first eight hours worked on the seventh day of work in any one workweek shall be compensated at the rate of no less than one and one-half times the

regular rate of pay for an employee. Any work in excess of 12 hours in one day shall be compensated at the rate of no less than twice the regular rate of pay for an employee.

92. California Labor Code § 1194 provides, in pertinent part, as follows: any employee receiving less than the . . . legal overtime compensation applicable to the employee is entitled to recover in a civil action the unpaid balance of the full amount of this . . . overtime compensation, including interest thereon, reasonable attorney's fees, and costs of suit.

93. Paragraph 3(A) of Wage Order No. 5-2001 provides, in pertinent part, as follows: [E]mployees shall not be employed more than eight (8) hours in any workday or more than 40 hours in any workweek unless the employee receives one and one-half (1 ½) times such employee's regular rate of pay for all hours worked over 40 hours in the workweek. Eight (8) hours of labor constitutes a day's work. Employment beyond eight (8) hours in any workday or more than six (6) days in any workweek is permissible provided the employee is compensated for such overtime . . .

94. Plaintiff KNUF and California Class members did not receive proper compensation for all hours worked in excess of eight (8) hours per day or forty (40) hours per week.

95. Paragraph 12(A) of the Wage Order authorizes employees to take paid rest periods based on the total hours worked daily at the rate of ten minutes rest per four hours or major fraction thereof.

96. Cal. Labor Code § 226.7(a) provides: "No employer shall require an employee to work during any . . . rest period mandated by an applicable order of the Industrial Welfare Commission."

97. Plaintiff KNUF and California Class members routinely and uniformly were not provided with the rest periods to which they were entitled, which amounted to a total of one to

three rest periods per day, depending upon the actual length of the employee's workday. By failing to provide Plaintiffs with these rest periods, Defendants violated Paragraph 12 of the Wage Order and California Labor Code section 226.7.

98. California Labor Code § 226(a) provides, in pertinent part, as follows: Every employer shall, semimonthly or at the time of each payment of wages, furnish each of his or her employees, either as a detachable part of the check, draft, or voucher paying the employee's wages, or separately when wages are paid by personal check or cash, an accurate itemized statement in writing showing . . . gross wages earned, . . . total hours worked by the employee . . .

99. Defendants violated California Labor Code § 226(a) because the wage statements they provided Plaintiff KNUF and California Class members did not accurately represent the total hours they worked, excluding as it did off-the-clock hours and time shaved by rounding down hours worked.

100. IWC Wage Order No. 5-2001 paragraph 7 provides, in pertinent part, as follows: Every employer shall keep accurate information with respect to each employee including the following:* * *(3) Time records showing when the employee begins and ends each work period. Meal periods, split shift intervals and total daily hours worked shall also be recorded. …(5) Total hours worked in the payroll period and applicable rates of pay.

101. Defendants have violated this Wage Order provision with respect to Plaintiff KNUF and California Class members by failing to keep accurate time records showing all hours worked. Plaintiff KNUF and California Class members were forced to work uncompensated, off-the-clock hours, which were not properly included in Defendants' records.

102. California Labor Code § 226(e) provides, in pertinent part, as follows: An employee suffering injury as a result of a knowing and intentional failure by an employer to comply with

subdivision (a) is entitled to recover the greater of all actual damages or fifty dollars ($ 50) for the initial pay period in which a violation occurs and one hundred dollars ($ 100) per employee for each violation in a subsequent pay period, not exceeding an aggregate penalty of four thousand dollars ($ 4,000), and is entitled to an award of costs and reasonable attorney's fees.

103. California Labor Code § 226(g) provides, in pertinent part, as follows: "An employee may also bring an action for injunctive relief to ensure compliance with this section, and is entitled to an award of costs and reasonable attorney's fees."

104. Plaintiff KNUF and California Class members have been misled, misinformed, deceived, defrauded, underpaid and otherwise injured as a result of said violations.

105. Plaintiff KNUF and California Class members bring claims pursuant to Cal. Lab. Code §§ 201-203, 206,

106. California Labor Code § 201(a) provides, in pertinent part, as follows: "If an employer discharges an employee, the wages earned and unpaid at the time of discharge are due and payable immediately."

107. California Labor Code § 202(a) provides, in pertinent part, as follows: If an employee not having a written contract for a definite period quits his or her employment, his or her wages shall become due and payable not later than 72 hours thereafter, unless the employee has given 72 hours previous notice of his or her intention to quit, in which case the employee is entitled to his or her wages at the time of quitting.

108. Where an employer willfully fails to pay, without abatement or reduction, in accordance with sections 201 through 203 of the California Labor Code, all wages due to an employee who has been discharged or has quit, California Labor Code §203 entitles the affected

employee to receive from the employer a penalty of up to 30 days wages calculated from the due date of the wages until the time an action to recover the wages is commenced.

109. The sums that Defendants paid to Plaintiff KNUF and California Class members of upon the end of their employment with Defendants did not include payment for all the hours shaved from their wage statement over the period of their employment with Defendants, as detailed above. Thus, Defendants have failed to pay earned wages (including but not limited to overtime compensation, premium pay for missed rest breaks, and split shift premiums) to Plaintiff KNUF and California Class members at the time they became due and payable, and have thus violated sections 201, 202 and 206 of the California Labor Code.

110. Defendants' failure to pay wages as alleged herein was willful in that Defendants knew that Plaintiff and the Subclass members were not receiving all of their earned compensation, since it was aware of all the practices described above.

111. As to each of the Subclass members (including Plaintiff KNUF and California Class members), it has been more than 30 days since the date of termination of employment.

112. Due to Defendants' California law violations, Plaintiff KNUF and California Members are entitled to recover from Defendants their damages, reasonable attorney's fees, liquidated damages, statutory penalties, and costs and disbursements of the action, pursuant to the California law.

**COUNT IV**

**VIOLATION OF APPLICABLE STATE WAGE AND HOUR LAWS**

(brought on behalf of a Rule 23 Class)

113. Plaintiffs reallege and incorporate all the foregoing paragraphs of this Class and Collective Action Complaint as if fully set forth herein.

114. At all relevant times, Class Members were employed by Defendants within the meaning of the applicable state wage and hour laws, just as Plaintiffs were employed by Defendants under the meaning of the FLSA and the relevant State Wage and Hour Laws.

115. Plaintiffs can represent the Class because the requirements of the FLSA and the requirements of the state labor laws enumerated earlier are identical for purposes of their overtime class claims.

116. Defendants knowingly and willfully violated Plaintiffs' and Class Members' rights by failing to pay them due a policy of underreporting employees' hours and failing to provide all earned tips, in violation of the state wage and labor laws outlined above.

117. Defendants knowingly and willfully failed to provide proper wage statements and notices to Wage Statement Subclass members, as required under the laws of New York State, California, and Minnesota.

118. Due to Defendants' state law violations, Plaintiffs and Class Members are entitled to recover from Defendants their unpaid overtime compensation, damages for unreasonably delayed payments, statutory penalties, liquidated damages, reasonable attorneys' fees and costs and disbursements of the action.

119. In addition to violations of State Labor overtime laws under which Plaintiffs bring class (not individual) claims, Defendants violated State provisions requiring employers to pay employees all wages owed. Since overtime wages are owed under the FLSA, these laws encompass class members' claims just as much as would explicit overtime requirements. These state law provisions include the following:

> [e]ach employer in [Arizona] shall designate two or more days in each month, not more than sixteen days apart, as fixed paydays for payment of wages to his employees [and that] [e]ach employer shall, on each of the regular paydays, pay to the employees . . . all wages due the employees up to such date . . . .[o]vertime or

> exception pay shall be paid no later than sixteen days after the end of the most recent pay period."

Ariz. Rev. Stat. § 23-351(C); *see also Weeks v. Matrix Absence Mgmt.*, 2022 U.S. Dist. LEXIS 30849 (D. Ariz. 2022)

> Upon prevailing in an action brought pursuant to this section, aggrieved persons shall recover the full amount of any unpaid back wages unlawfully withheld plus the same amount as liquidated damages and shall be awarded reasonable attorney's fees and costs.

Florida Minimum Wage Act, Fla. Stat. § 448.110(6)(c)(1)

> Damages recoverable by an employee. When it has been shown that an employer has intentionally failed to pay an employee wages or reimburse expenses pursuant to section 91A.3, whether as the result of a wage dispute or otherwise, the employer shall be liable to the employee for any wages or expenses that are so intentionally failed to be paid or reimbursed, plus liquidated damages, court costs and any attorney's fees incurred in recovering the unpaid wages and determined to have been usual and necessary. In other instances the employer shall be liable only for unpaid wages or expenses, court costs and usual and necessary attorney's fees incurred in recovering the unpaid wages or expenses.

Iowa Wage Payment Collection Law, Chapter 91A.8; *see also Bouaphakeo v. Tyson Foods, Inc.*, 564 F. Supp. 2d 870, 883 (N.D. Iowa 2008) ("[T]he FLSA may be used to establish an employee's right to a certain amount of wages under the IWPCL and an employer's violation of the IWPCL for not paying all wages due its employees." (quotation omitted))

> (a) Upon the discharge of any laborer or other employee of any kind whatever, it shall be the duty of the person employing such laborer or other employee to pay the amount then due under the terms of employment, whether the employment is by the hour, day, week, or month, on or before the next regular payday or no later than fifteen days following the date of discharge, whichever occurs first.
> (b) Upon the resignation of any laborer or other employee of any kind whatever, it shall be the duty of the person employing such laborer or other employee to pay the amount then due under the terms of employment, whether the employment is by the hour, day, week, or month, on or before the next regular payday for the pay cycle during which the employee was working at the time of separation or no later than fifteen days following the date of resignation, whichever occurs first.

Louisiana Wage Payment Act, La. R.S. § 23:631(A)(1)

> An employee having a claim for wages which are not paid within thirty days of the regular payday designated or agreed upon may institute suit for such unpaid wages in the proper court. If an employee establishes a claim and secures judgment on the claim, such employee shall be entitled to recover the full amount of the judgment and all costs of such suit, including reasonable attorney's fees.

Nebraska Wage Payment and Collection Act, Neb. Rev. Stat. § 48-1231(1)

> In case of any failure to pay wages due to an employee as required by Section 41-10-40 or 41-10-50 the employee may recover in a civil action an amount equal to three times the full amount of the unpaid wages, plus costs and reasonable attorney's fees as the court may allow. Any civil action for the recovery of wages must be commenced within three years after the wages become due.

South Carolina Payment of Wages Act, S.C. Code Ann. § 41-10-80(C).

120. The Florida Minimum Wage Act has a pre-suit notice requirement. Fla. Stat. § 448.110(6)(a). However, Plaintiffs invoke the Florida Minimum Wage Act not only in his individual capacity but to bring class claims on behalf of class members residing in Florida. Thus, Plaintiffs are not personally required to provide Defendants with a pre-suit notice as to each class member. As to these absent Florida class members, courts in Florida have "found no authority mandating that a detailed pre-suit notice for each and every putative class member be served on [d]efendants under § 448.110(6) prior to the filing of a putative class action under the FMWA." *Griffith v. Landry's, Inc.*, 2016 U.S. Dist. LEXIS 196397, *12 (M.D. Fla. May 17, 2016).

121. The Third Circuit Court of Appeals has clearly demonstrated the untenability of any such requirement:

> We raise the following questions to further demonstrate the error of the proposed framework adopted by our dissenting colleagues. If the dissent's "colorable legal claim" test is a threshold inquiry for commonality, why should the court not consider every potential disqualifier from one's having a "colorable legal claim?" For example, in any class certification case, should the court consider whether all potential class members complied with applicable pre-notice requirements under the relevant substantive law? Should the court consider whether every potential class member exhausted her administrative remedies under the relevant substantive law? Should the court evaluate whether each class member's claim complies with the applicable statute of limitations? The answers to these questions most certainly implicate whether a litigant, in a class action or otherwise, has a "colorable legal claim." These questions, moreover, show how flawed, from an administrative, logical, and practical standpoint, the dissent's and objectors' approach really is. No class would ever be certified because it would be impossible to demonstrate that every class member has a "colorable legal claim." (Dissenting Op. at 10.) More than this, it would gut commonality, for, most certainly, individual

> issues would then predominate. There would simply be no class that could meet this commonality and predominance test.

*Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 310 (3rd Cir. 2011).

122. Some states' wage and hour or wage payment statutes may prescribe means other than class actions for pursuing common claims. Any state restrictions on class actions are irrelevant, however, as this case was filed in federal court, where the Federal Rules of Civil Procedure hold. See *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co*., 559 U.S. 393, 400, 130 S. Ct. 1431, 1438 (2010) (F.R.C.P. 23 authorizes "class actions across the board" notwithstanding state law restrictions on class actions); *Dremak v. Iovate Health Scis. Grp., Inc. (In re Hydroxycut Mktg. & Sales Practices Litig.)*, 299 F.R.D. 648, 654 (S.D. Cal. 2014) ("[A]pplication of Rule 23 to Plaintiffs' [FBPA] claims does not run afoul of the Rules Enabling Act. Rule 23 governs Plaintiff's claims, and Plaintiff's claims are not subject to dismissal based on the state statutes prohibiting class actions."); *Lisk v. Lumber One Wood Preserving, LLC*, 792 F.3d 1331, 1336 (11th Cir. 2015) ("The bottom line is this. The Alabama statute restricting class actions, like the New York statute at issue in *Shady Grove*, does not apply in federal court. Rule 23 controls.").

123. Due to Defendants' state law violations, Plaintiffs and Class Members are entitled to recover from Defendant their unpaid overtime compensation, damages for unreasonably delayed payments, statutory penalties, liquidated damages, reasonable attorneys' fees and costs and disbursements of the action.

## COUNT V

## VIOLATION OF CLASS MEMBERS' CONTRACTS AND/OR DEFENDANT'S UNJUST ENRICHMENT

(brought on behalf of a Rule 23 Class)

124. Plaintiffs reallege and incorporate all the foregoing paragraphs of this Class and Collective Action Complaint as if fully set forth herein.

125. To the extent that the Fair Labor Standards Act and/or State wage laws do not protect employees for a failure to compensate gap-time claims (claims for unpaid wages for hours worked up to forty which do not implicate statutory minimum wage laws), Plaintiffs and Class Members assert such claims under breach of contract and unjust enrichment.

126. When Plaintiffs and Class Members entered into employment with Defendants, the parties formed implied contracts, which contain inherent duties of good faith and fair dealings, to pay employees at agreed upon hourly rates for all hours worked.

127. Plaintiffs and Class Members provided services to Defendants as required under their agreements. However, Defendants' failure to compensate all hours of work, including gap-time hours, breached Plaintiffs' and Class Members' agreements.

128. As a direct and proximate result of Defendants' failure to act fairly and in good faith, Plaintiffs and Class Members are entitled to recovery of the full amount of wrongfully withheld or diverted payments, punitive damages due to egregious conduct, attorneys' fees and costs, and such other legal and equitable relief as this Court deems just and proper.

129. Moreover, absent an implied contract, by virtue of Defendants' conduct as alleged herein, and Plaintiffs' and Class Members' performance, Defendants were unjustly enriched by the Plaintiffs' and Class Members' conduct and did not compensate Plaintiffs and Class Members fully.

130. The circumstances are such that it would be inequitable to allow Defendants to retain the excess benefit from Plaintiffs and Class Members conduct without paying fair value for it.

131. As a direct and proximate result of Defendants' wrongful withholding of funds that should have been paid to Plaintiffs and Class Members, Plaintiffs and Class Members have sustained damages in an amount according to proof at trial.

132. Defendants' withholding of proper compensation from employees was done with malice and in conscious disregard of Plaintiffs' and Class Members' rights with the intent to cause injury to Plaintiffs and Class Members. Plaintiffs and Class Members are entitled to recovery of the full amount of wrongfully withheld or diverted payments, punitive damages due to egregious conduct, attorneys' fees and costs, and such other legal and equitable relief as this Court deems just and proper.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs, on behalf of themselves, FLSA Collective Plaintiffs, and the Class, respectfully requests that this Court grant the following relief:

a. A declaratory judgment that the practices complained of herein are unlawful under the FLSA, the NYLL, and the RSWHL;

b. An injunction against Defendants and their officers, agents, successors, employees, representatives and any and all persons acting in concert with them as provided by law, from engaging in each of the unlawful practices, policies, and patterns set forth herein;

c. An award of unpaid wages, including overtime, due to timeshaving, due under the FLSA, the NYLL, and the RSWHL;

d. An award of unpaid wages, including overtime, due to invalid tip credit deductions, due under the FLSA, the NYLL, and the RSWHL;

e. An award equal to the amount of the improperly retained tips withheld by Defendants;

f. An award of statutory penalties as a result of Defendants' failure to comply with the wage notice and wage statement requirements of each RSWHL;

g. An award of liquidated and/or punitive damages as a result of Defendants' willful failure to pay proper wages pursuant to 29 U.S.C. § 216;

h. An award of liquidated and/or punitive damages as a result of Defendants' willful failure to pay proper wages pursuant to the NYLL and the RSWHL;

i. An award of pre-judgment and post-judgment interest, costs, and expenses of this action together with reasonable attorney's fees and expert fees and statutory penalties;

j. Designation of Plaintiffs as Representatives of the FLSA Collective Plaintiffs;

k. Designation of this action as a class action pursuant to F.R.C.P. 23;

l. Designation of Plaintiffs as Representatives of the Class;

m. Designation of Plaintiff YUWONO as Representative of the Tip-Credit Subclass; and

n. Such other and further relief as this Court deems just and proper.

**JURY DEMAND**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands trial by jury on all issues so triable as of right by jury.

**NY BCL §630 NOTICE AND DEMAND**

Plaintiff hereby gives this notice, in writing, to each shareholder of Defendants, and any of its parents, subsidiaries, or affiliated entities that is served with the summons and complaint in this action, that they intend to hold the shareholders liable under New York Business Corporation Law § 630. This notice is given within one hundred and eighty days after termination of the employment services of Plaintiff.

Plaintiff also demands an examination of the record of shareholders under paragraph (b) of section 624 (Books and records; right of inspection, prima facie evidence) of New York Business and Corporation Law.

An action to enforce such liability shall be commenced within ninety days after the return of an execution unsatisfied against the Defendants upon a judgment recovered against it for such

services. The provisions of this paragraph shall not apply to an investment company registered as such under an act of congress entitled "Investment Company Act of 1940."

Dated: May 11, 2026
New York, New York

Respectfully submitted,

By: */s/ C.K. Lee*
C.K. Lee, Esq.

**LEE LITIGATION GROUP, PLLC**
C.K. Lee, Esq. (CL 4086)
148 West 24th Street, Eighth Floor
New York, NY 10011
Tel.: 212-465-1188
Fax: 212-465-1181
*Attorneys for Plaintiff, FLSA Collective Plaintiffs, and the Class*